IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MOHAMED SAMEH AHMED, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:18-CV-674 |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

By statute, the United States has waived its sovereign immunity for claims by taxpayers based on reckless, intentional, or negligent disregard of Internal Revenue Code provisions by Internal Revenue Service employees while collecting taxes, so long as the taxpayer has exhausted administrative remedies and sues within two years after the cause of action accrues. Plaintiff Mohamed Sameh Ahmed has sued the United States under this statute, contending that IRS employees recklessly or intentionally disregarded relevant law when they seized his commercial property to collect purported unpaid taxes and attempted to sell it to satisfy back taxes that he did not owe. Because Mr. Ahmed's claims accrued more than two years before he raised them in this action, the motion to dismiss will be granted and the complaint will be dismissed.

I.  **Procedural History and Allegations in the Second Amended Complaint**

In the operative complaint, Mr. Ahmed alleges that in 2006 and 2007 the IRS erroneously assessed him for unpaid employment taxes and then in 2015 wrongfully

seized his commercial property in Woodleaf, North Carolina to collect these taxes. Doc. 22 at ¶¶ 7–8. The IRS tried to sell the seized property for less than fair market value by public auction on three separate occasions in 2015 and 2016 without success. *Id.* at ¶¶ 9–12. In July 2016, Mr. Ahmed asked the IRS to release the levy and return his property. *Id.* at ¶ 12. He also made other requests for installment agreements that the IRS did not grant. *Id.* The IRS released the property in September 2016 after Mr. Ahmed proved he had paid employment taxes and after he paid $2,840.49 to the IRS. *Id.* at ¶¶ 13, 15.

On August 1, 2017, the IRS received an administrative claim from Mr. Ahmed seeking civil damages. *See* Doc. 23-2. He contended that the IRS prematurely levied a lien on his property and then failed to release the lien in violation of Internal Revenue Code provisions and regulations. *See id.* The IRS denied the claim on August 28, 2017. *See* Doc. 22 at ¶ 6.

On August 2, 2018, Mr. Ahmed filed the initial complaint in this action *pro se* against the United States, alleging mistakes and violations during the IRS's initial assessment and levy more than two years earlier. Doc. 1. After the United States filed a motion to dismiss based on the statute of limitations and other grounds, *see* Doc. 11, he filed an amended complaint in November 2018. Doc. 14. The first amended complaint continued to reference problems with the initial assessment and levy, and it also identified at least one problem with an attempted sale on August 8, 2016. *Id.* at ¶ 41. After the United States again moved to dismiss on statute of limitations and other grounds, Doc. 15, Mr. Ahmed received leave to file a second amended complaint. Text Order 04/01/2019.

In the second amended complaint, filed on April 15, 2019, Mr. Ahmed abandoned his claims arising out of the initial levy, apparently recognizing the time bar. *See* Doc. 22. Instead, he set forth detailed facts about various actions by the IRS after that initial levy. Those facts, construed liberally,[1] assert seven separate violations of the Internal Revenue Code by IRS employees:

1. A failure to release his property after an unsuccessful August 8, 2016, public auction, in violation of 26 U.S.C. § 6335(e)(1)(D). *Id.* at ¶ 10.

2. A postponement of the property's sale following the unsuccessful August 8, 2016, public auction to a date after the statutory time limit, in violation of 26 U.S.C. § 6335(e)(2)(F). *Id.* at ¶ 10.

3. A planned September 7, 2016, sale of the property at the IRS office in Atlanta, Georgia instead of the property's own county, in violation of 26 U.S.C. § 6335(d). *Id.* at ¶ 11.

4. A failure to release the levy upon all or part of his property after his July 18, 2016 request even though the property's fair market value exceeded his tax liability, in violation of 26 U.S.C. § 6343(a)(1)(E). *Id.* at ¶ 12.

5. A refusal to release the property from seizure after the September 7, 2016 advertised sale date until Mr. Ahmed made a one-time payment of $2,455.13, in violation of 26 U.S.C. § 6335. *Id.* at ¶ 12.

6. False statements to Mr. Ahmed and others on "numerous occasions" to "accomplish" the sale of his property misrepresenting that his tax liability had been verified, as required by 26 U.S.C. § 6331(j)(2)(A), in violation of an unspecified subsection of 26 U.S.C. § 7214. *Id.* at ¶¶ 13–14.

7. A failure to return Mr. Ahmed's property to him after prematurely levying and seizing it, in violation of 26 USC § 6343(d)(2)(A). *Id.* at ¶ 14.

---

[1] *See Wilner v. Dimon*, 849 F.3d 93, 103–04 (4th Cir. 2017). Mr. Ahmed in his response appears to dispute that the only statutory violations are in paragraphs 10 through 14 of his complaint, but he does not identify in his complaint or response any alleged violations outside of these paragraphs. *See* Doc. 27 at 4–6.

The Government contends these acts occurred outside the two-year statute of limitations and that the complaint should thus be dismissed. Doc. 24 at 2.

## II. Jurisdiction under 26 U.S.C. § 7433

Mr. Ahmed asserts that the Court has jurisdiction over his claims under 28 U.S.C. § 1340, which provides federal courts with original jurisdiction over civil actions arising under the Internal Revenue Code, and under 26 U.S.C. § 7433, which provides a limited waiver of the Government's sovereign immunity. Doc. 22 at ¶¶ 3–4; *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 803 (4th Cir. 2019). Specifically, § 7433(a) provides that:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

Subsection 7433(d)(3) requires that "an action to enforce liability created under this section . . . may be brought only within 2 years after the date the right of action accrues."

In recent years, the Supreme Court has issued a series of decisions characterizing "as nonjurisdictional an array of mandatory claim-processing rules and other preconditions to relief," *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (collecting cases), and it recently reaffirmed that courts will treat restrictions as nonjurisdictional unless "the legislature clearly states that a prescription counts as jurisdictional." *Id.* at 1850 (quoting *Arbaugh v. Y&H Corp.*, 564 U.S. 500, 515–16 (2006)).[2] But none of these

---

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

cases discussed whether the pre-filing conditions or the statute of limitations in § 7433 are jurisdictional.[3]

Whether the statute of limitations is jurisdictional or not,[4] there is no doubt that it applies when raised by the United States. And this defense is properly raised on a motion to dismiss where, as here and discussed below, the allegations of the second amended complaint, accepted as true, show that Mr. Ahmed's claims fall outside the statute of limitations. *See, e.g.*, *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 577 (4th Cir. 2017) ("A defendant's claim that an action is time-barred is an affirmative defense that it can raise in a motion to dismiss when the face of the complaint includes all necessary facts for the defense to prevail."); *see also Portsmouth Ambulance,*

---

[3] Several circuits have applied *Arbaugh* to hold that § 7433(d)(1)'s exhaustion requirement is not jurisdictional. *See Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 114 (3d. Cir. 2017); *Gray v. United States*, 723 F.3d 795, 798 (7th Cir. 2013); *Hoogerheide v. IRS*, 637 F.3d. 634, 636–38 (6th Cir. 2011).

[4] There is some authority to support the view that the time bar in § 7433 limits subject matter jurisdiction over civil actions. The Supreme Court has held that courts do not have subject matter jurisdiction over untimely tax refund suits under 26 U.S.C. § 6511. *See United States v. Dalm*, 494 U.S. 596, 608–10 (1990). While one lower court has since noted that this decision "predated a string of recent cases criticizing earlier overuse of the term 'jurisdictional,'" *Drake v. United States*, No. CV-10-08153-PCT-FJM, 2011 WL 814964, at *1 (D. Ariz. Mar. 4, 2011) (collecting cases), the Supreme Court has not explicitly overruled *Dalm*. Moreover, in establishing the cause of action, § 7433(d)(3) expressly limits actions "without regard to the amount in controversy" to those brought "only within 2 years after the date the right of action accrues," and thus tends to speak to the court's "authority" to hear a matter rather than a party's "procedural obligations." *Fort Bend*, 139 S. Ct. at 1850–51. Finally, neither *Fort Bend* nor *Arbaugh* involved sovereign immunity, and after *Arbaugh* the Fourth Circuit in an unpublished opinion affirmed a district court decision dismissing actions under § 7433 as untimely for lack of jurisdiction. *See Zinstein v. United States*, 584 F. App'x 100 (2014) (citing *Gandy Nursery, Inc. v. United States*, 318 F.3d 631 (5th Cir. 2003)). On the other hand, in the context of equitable tolling, the Supreme Court has also held that the Federal Tort Claims Act's statute of limitation is non-jurisdictional. *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632–33 (2015).

*Inc. v. United States*, 756 F.3d 494, 503–04 (6th Cir. 2014) (affirming lower court's dismissal of § 7433 claims filed after lapse of the two-year statute of limitations); *Behr v. United States*, No. Civ. 09-502 (JRT/RLE), 2010 WL 1131383, at *6–7 (D. Minn. Feb. 8, 2010) (Mag. J., Report and Recommendation) (holding that it is "appropriate to examine whether a claim is plainly time-barred on its face when considering a motion to dismiss" and dismissing certain claims under §§ 7432 and 7433 as untimely), *adopted by*, 2010 WL 1131285 (D. Minn. Mar. 19, 2010), *aff'd*, 399 F. App'x 125 (8th Cir. 2010).

### III. Statute of Limitations

As noted above, civil actions filed under § 7433 may be brought only within two years after accrual. Section 7433 claims accrue when "the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433–1(g)(2); *accord Richard v. United States*, 746 F. Supp. 2d 778, 782 (E.D. Va. 2010). "Courts have interpreted this provision to mean that a cause of action accrues when plaintiffs possess sufficient 'critical facts' to understand their potential injury." *Zinstein v. United States*, No. 1:13CV633 (JCC/IDD), 2013 WL 5504418, at *4 (E.D. Va. Oct. 2, 2013), *aff'd*, 584 F. App'x 100 (4th Cir. 2014).

#### a. *First through Fifth Alleged Internal Revenue Code Violations*

Mr. Ahmed contends in the first through fifth alleged violations that the IRS did not comply with Internal Revenue Code provisions when attempting to sell his property on August 8 and September 7, 2016. *See* Doc. 22 at ¶¶ 10–12. These allegedly intentional or reckless acts by the IRS occurred, per the second amended complaint, on or before September 7, 2016, and Mr. Ahmed knew about them then or immediately

thereafter.[5] In the only pleading filed within the statute of limitations for these violations—the August 2016 initial complaint—Mr. Ahmed did not allege any of these underlying facts. He made a brief mention of his July 18, 2016, request for release and of the fact that the IRS postponed the sale three times, *see* Doc. 1 at ¶ 42, but he provided no details and made no claim that any postponement was unlawful. The claims in the initial complaint did not assert or rely on any specific statutory violations arising from these acts or related to the attempted property sales. Rather, he focused exclusively on the initial levy in January 2015. *See id*. at ¶¶ 6–48. Mr. Ahmed only alleged the facts underlying these later violations in the first amended complaint filed November 2018, *see* Doc. 14 at ¶¶ 15, 25, 29, 30, and he first claimed that these acts were statutory violations in his second amended complaint filed in April 2019. *See* Doc. 22. Both pleadings were filed well beyond the expiration of the two-year statute of limitations in September 2018.

Mr. Ahmed's claims could proceed if his new claims raised in the first and second amended complaints relate back to the initial complaint. As is relevant here, Federal

---

[5] According to the second amended complaint, Mr. Ahmed was aware of these attempted sales and was engaged in ongoing discussions with the IRS during this time. Specifically, Mr. Ahmed had a reasonable opportunity to discover that the IRS (1) had not "released" his property to him after it was "not declared sold," in violation of § 6335(e)(1)(D), after the second public auction, *see* Doc. 22 at ¶ 10, i.e., on August 8, 2016; (2) had adjourned his property's sale "for a period . . . exceed[ing] in all 1 month," in violation of § 6335(e)(2)(F), when it postponed the sale after the second public auction and advertised a new sale, *id.* at ¶¶ 9–10, i.e., on August 10, 2016; (3) had set the last public auction for a location outside "the county in which the property [was] seized," in violation of § 6335(d), by the date of that sale, *id.* at ¶ 11, i.e., on or before September 7, 2016; (4) did not "release . . . the levy" when "the fair market value of [the] property exceed[ed] such liability," in violation of § 6343(a)(1)(E), when he requested its release on these grounds, *id.* at ¶ 12, i.e., on or before July 18, 2016; and (5) had not released the property from seizure, in violation of § 6335, after the last advertised sale date had passed, *id.* at ¶ 12, i.e., on or before September 7, 2016.

Rule of Civil Procedure 15(c)(1)(B) allows relation back when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The Fourth Circuit has held that new claims do not relate back to original claims when they arise from separate occurrences of "both time and type." *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000).

In his second amended complaint Mr. Ahmed asserted new statutory violations arising out of attempted sales not discussed in his initial complaint. In a passing assertion that the IRS "had postponed the sale of the property three times," he does not say that the IRS actually held or attempted to hold public sales, nor did he specify the location or timing of those postponed sales. *See* Doc. 1 at ¶ 42. He did not mention any conduct associated with the postponed sales. He included no facts that might support an inference that the IRS scheduled a sale in an impermissible location, that it postponed any sales beyond statutory time limitations, or that the fair market value of his property exceeded his levy, as he later claimed. *See* Doc. 22 at ¶¶ 9–12. The passing reference to three postponed sales "could not adequately put the defendant[] on notice" of the new claims in Ahmed's second amended complaint, for which he "would need to adduce facts" entirely absent from the initial pleading. *Bilal-Edwards v. United Planning Org.*, 15 F. Supp. 3d 1, 17 (D.D.C. 2013) (holding such claims did not relate back under Rule 15(c)(1)(B)).

Overall, the changes in Mr. Ahmed's amended complaints "go beyond the mere correction or factual modification of the original pleading and significantly alter the claim . . . alleged in that pleading." 6A Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure Civil § 1497 (3d ed. Apr. 2019 Update). Mr. Ahmed's

8

allegations as to the attempted sales describe different conduct and transactions on different dates than the allegations as to the levy; they are different in "time and type" and are therefore time-barred. *Compare Pittman*, 209 F.3d at 318 (holding that a defendant's new habeas claims of ineffective assistance did not relate back to original claims of improper sentencing enhancements and lack of jurisdiction), *and Bilal-Edwards*, 15 F. Supp. 3d at 17 (holding new FLSA claims did not relate back to allegation made "in passing" as to overtime compensation), *with Kenner v. Kelly*, No. 11-cv-1538 DMS (WVG), 2018 WL 1726440, at *4 (S.D. Cal. Apr. 10, 2018) (finding § 7433 claims in amended complaint relate back where the plaintiff "set forth essentially identical factual allegations in both pleadings").

    b. *Sixth and Seventh Alleged Internal Revenue Code Violations*

Mr. Ahmed alleges for the sixth violation that IRS employees on "numerous occasions" made "false statements" in violation of 26 U.S.C. § 7214, misrepresenting that the seizure of his property was properly verified under § 6331(j)(2)(A), to "accomplish their goal of selling Mr. Ahmed's seized property." Doc. 22 at ¶¶ 13–14. Drawing all reasonable inferences in favor of Mr. Ahmed, the latest he would reasonably have known of the "critical facts" of any false statements made to accomplish the sales of his property would be when his property was returned to him on September 9, 2016, as there are no allegations the IRS tried to sell his property after this date. But, as noted above, the only complaint filed within two years of this date omits any facts relevant to the attempted sales of his properties, and his allegations in his second amended complaint as to the attempted sales do not "relate back" to his initial complaint. In his initial complaint, Mr.

9

Ahmed did allege certain false statements in violation of § 7214. *See* Doc. 1 at ¶¶ 27–30. But these statements were made during the IRS's effort to seize his property and thus would have occurred on or before the January 29, 2015, seizure.[6] *See* Doc. 1 at ¶ 22.

As for the seventh alleged violation, Mr. Ahmed asserts that the IRS "prematurely levied [and] seized Mr. Ahmed's property but refused to release it back to him," in violation of § 6343(d)(2)(A). Doc. 22 at ¶ 14. Any claim based on a premature levy of Mr. Ahmed's property and refusal to return his property would accrue once Mr. Ahmed had a "reasonable opportunity" to discover the levy and learn that the IRS refused to release his property. 26 C.F.R. § 301.7433–1(g)(2). At the very latest, Mr. Ahmed had a reasonable opportunity to discover this when the IRS advertised this sale in March 2016 after which, according to Mr. Ahmed, the IRS denied Mr. Ahmed appeal rights to the revised minimum bid amount. Doc. 22 at ¶ 10. As Mr. Ahmed's initial complaint was filed in August 2018, more than two years after the advertised sale, his claims based on this violation are also time-barred.[7]

---

[6] In the alternative, to the extent this claim relies on allegations that the IRS disregarded proper procedures for assessing Mr. Ahmed's tax liability, *see* Doc. 22 at ¶ 14, it is not related to IRS actions made "in connection with any collection of Federal tax," as required for § 7433 claims. *See Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 411 (4th Cir. 2003); *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir. 1994) (holding plaintiff could not bring action under § 7433 for damages when the IRS wrongfully assessed a tax penalty and then levied and sold her property); *see also United States v. Williams*, 514 U.S. 527, 531 (1995) ("[W]e may not enlarge the waiver [of sovereign immunity] beyond the purview of the statutory language."), *superseded by statute on other grounds as stated in Portsmouth Ambulance*, 756 F.3d at 498–99.

[7] In the alternative, to the extent Mr. Ahmed alleges a continuing failure by the IRS to release his property up until they released it on September 9, 2016, such claims are not authorized, as "most courts have rejected the application of a continuing violation theory in this context." *Zinstein*, 2013 WL 5504418, at *4 (collecting cases).

## IV. Conclusion

Section 7433 requires that actions against the United States based on intentional, reckless, or negligent violations of the Internal Revenue Code by IRS employees while undertaking tax collection activities be brought within two years of accrual. Where, as here, the United States asserts the statute of limitations and the complaint on its face shows the claims are untimely, the complaint must be dismissed. The claims in the second amended complaint accrued more than two years before he raised them in his November 2016 and April 2017 amended complaints, and those claims are not based upon the same "conduct, transaction, or occurrence" alleged in his initial complaint.

Whether this dismissal is proper under 12(b)(1) or 12(b)(6) is of no moment; the Court assumes for purposes of both rules that the allegations in the complaint are true. Under the facts alleged by Mr. Ahmed, dismissal is mandatory.

It is **ORDERED** that the Government's motion to dismiss the second amended complaint, Doc. 23, is **GRANTED**. Judgment will be entered separately.

This the 5th day of August, 2019.

UNITED STATES DISTRICT JUDGE